ARNOLD v AUTO-OWNERS INSURANCE COMPANY

Docket No. 77-4341. Submitted April 11, 1978, at Lansing.—Decided
June 6, 1978. Leave to appeal applied for.

Elmer P. Arnold was employed as a truck driver by Square Deal
Cartage Company. On August 18, 1975, Mr. Arnold ruptured a
disc in his back while lifting onto the upper deck of the truck
which he was operating a ramp used for loading automobiles
onto trucks. As a result plaintiff became disabled and has been
drawing workers' compensation benefits. Mr. Arnold com-
menced an action against Auto-Owners Insurance Company
and Michigan Mutual Insurance Group to recover no-fault
insurance benefits. Auto-Owners had issued a policy to the
plaintiff covering his personal automobile. Michigan Mutual
had issued a policy to the plaintiff's employer covering the
truck operated by the plaintiff. Summary judgment for defend-
ants, Ingham Circuit Court, Ray C. Hotchkiss, J., based on the
trial court's interpretation of a provision of the no-fault auto-
mobile insurance act which provides that no-fault insurers are
liable for paying certain claims arising from accidents involving
parked motor vehicles when the injury "was a direct result of
physical contact with equipment permanently mounted on the
vehicle, while the equipment was being operated or used or
property being lifted onto or lowered from the vehicle in the
loading or unloading process". Plaintiff appeals. *Held:*

The statutory language in question is to be interpreted as
containing two independent clauses; therefore, the injuries
which were suffered by the plaintiff are compensable under the
no-fault act.

Reversed and remanded for further proceedings.

AUTOMOBILES—INSURANCE—NO-FAULT—COMPENSABLE INJURIES—
PARKED VEHICLES—EQUIPMENT ON VEHICLE—STATUTES.

A section of the no-fault automobile insurance act which provides
in part that no-fault insurers are liable for paying certain
claims arising from accidents involving *parked* motor vehicles
where "the injury was a direct result of physical contact with

---

equipment permanently mounted on the vehicle, while the equipment was being operated or used or property being lifted onto or lowered from the vehicle in the loading or unloading process" makes compensable injuries which are a direct result of physical contact with property being lifted onto or being lowered from the parked vehicle in the loading or unloading process (MCL 500.3106[b]; MSA 24.13106[b]).

*Sinas, Dramis, Brake, Turner, Boughton, Mc-Intyre & Reisig, P. C.* (by *George T. Sinas),* for plaintiff.

*Fraser, Trebilcock, Davis & Foster,* for defendant Auto-Owners Insurance Company.

*Foster, Swift, Collins & Coey, P. C.* (by *John L. Collins* and *Michael Schmedlen),* for defendant Michigan Mutual Insurance Company.

Before: DANHOF, C. J., and BRONSON and CYNAR, JJ.

DANHOF, C. J. This appeal involves § 3106(b) of the no-fault motor vehicle insurance act, MCL 500.3106(b); MSA 24.13106(b). Plaintiff appeals from a circuit court order entered October 19, 1977, denying his motion for a rehearing and reaffirming the circuit court's order of August 17, 1977, granting defendants' motions for summary judgment.

Plaintiff was employed by Square Deal Cartage Company. His duties included loading, driving and unloading a truck used to haul automobiles. On August 18, 1975, plaintiff ruptured a disc in his back while lifting a loading dock "skid" (ramp) onto the upper deck of the truck he operated. As a result, plaintiff became disabled and has been drawing workers' compensation benefits.

Plaintiff brought this suit to recover no-fault

insurance benefits. Defendant Michigan Mutual had issued a no-fault policy to the plaintiff's employer covering the truck operated by plaintiff. Defendant Auto-Owners had issued a no-fault policy to the plaintiff covering his own personal automobile.

In granting defendants' motions for summary judgment the circuit court dealt with one issue, the meaning of MCL 500.3106(b); MSA 24.13106(b), which provides that no-fault insurers are liable for paying certain claims arising from accidents involving *parked* motor vehicles when:

"(b) The injury was a direct result of physical contact with equipment permanently mounted on the vehicle, while the equipment was being operated or used or *property being lifted onto or lowered from the vehicle in the loading or unloading process.*" (Emphasis added.)

Defendant insurers claim that the emphasized clause is a dependent clause subject to the requirements set forth in the first part of the section. Thus, in their view, an injury occurring during the loading process is compensable only if it was the direct result of physical contact with equipment permanently mounted on the vehicle. Plaintiff argues that the emphasized clause is independent and that therefore an injury occurring as a direct result of physical contact with property being lifted onto or lowered from a vehicle during the loading or unloading process is compensable, regardless of whether the injury was caused by physical contact with equipment permanently mounted on the vehicle. Since plaintiff's injury was caused by lifting a loading dock ramp (not permanently mounted on the vehicle) onto the truck, acceptance of defendants' interpretation disposes of the claim under § 3106(b). The circuit

court agreed with defendants' reading of the statute, stating:

"Section 3106, taken as a whole, attempts to restrict those instances in which no-fault benefits are payable for injuries resulting from accidents or occurences involving parked vehicles. Section 3106(b) may be inartfully drawn and subject to numerous grammatical improvements and interpretations, many of which have been offered by the parties, but this Court is obligated to deal with the statute in the form in which it is written. Within this framework, the most natural and logical reading of Section 3106(b) is that the portion of the subsection which follows the comma modifies that portion which precedes the comma. Recovery of benefits is therefore limited to those instances in which injury is a direct result of physical contact with equipment permanently mounted on the vehicle. Plaintiff was not so injured and is therefore not entitled to the recovery of no-fault insurance benefits."

The statute is ambiguous. Neither of the interpretations contended for by the parties is clearly correct on the face of the statute. Hence, we look to legislative intent to discern the correct interpretation. However, there is very little helpful legislative history. As originally introduced on June 2, 1971, SB 782 divided this section of the statute into two subsections:

"Sec. 6. Accidental bodily injury does not arise out of the ownership, operation, maintenance or use of a parked vehicle as a motor vehicle unless any of the following occur:

* * *

"(b) The injury was a direct result of physical contact with (i) equipment permanently mounted on the vehicle, while the eqipment was being operated or used or (ii) property being lifted onto or lowered from the vehicle in the loading or unloading process."

As finally enacted, the wording and punctuation remained unchanged but the subsection numbering had been removed. We have been unable to find any record of *why* this change was made. It is unclear whether the change was merely cosmetic or intended to make the second clause dependent on the first.

Next we turn for guidance to the administrative interpretation of the statute. See *Lane v Dept of Corrections, Parole Board,* 383 Mich 50, 56; 173 NW2d 209 (1970). In April of 1973, after the no-fault law had been enacted but prior to its effective date, the insurance commissioner issued guidelines interpreting the act (Michigan Personal Injury Protection Endorsement, pp 1–2), in relevant part as follows:

"Exclusions
"This insurance does not apply

\* \* \*

"(j) to *bodily injury* sustained by any person arising out of the ownership, operation, maintenance or use, including loading or unloading, of a parked *motor vehicle* unless

\* \* \*

"2. such *bodily injury* was a direct result of physical contact with

"a. equipment permanently mounted on such *motor vehicle* while such equipment was being operated or used, or

"b. property being lifted onto or lowered from such *motor vehicle* in the loading or unloading process, or."

This administrative interpretation, which reads § 3106(b) as containing two independent clauses, is entitled to be given great weight. *Lane, supra.*

*Dembinski v Aetna Casualty & Surety Co,* 76 Mich App 181, 183; 256 NW2d 69 (1977), involved

the interpretation of insurance policy language which followed the insurance commissioner's guidelines quoted above. In comparing the policy language with the statutory language Judge R. B. BURNS observed:

"The [policy] clause is not ambiguous in the instant case. The insurance contract excludes 'bodily injury * *' * arising out of * * * use, including loading and unloading, of a parked vehicle unless * * * such bodily injury was the direct result of physical contact with * * * property being lifted onto or lowered from such motor vehicle in the loading or unloading process'. *The wording of this exclusion is similar to and complies with the definition of accidental bodily injury arising out of use of a parked vehicle contained in MCLA 500.3106; MSA 24.13106.*" (Emphasis added.)

While not the holding of the case, this observation from *Dembinski* is further support for adoption of the insurance commissioner's construction of the statute. This interpretation is not clearly wrong, nor is any other construction clearly required. See *Lane, supra,* at 56. Therefore, we conclude that § 3106(b) makes compensable injuries which are a direct result of physical contact with property being lifted onto or lowered from the parked vehicle in the loading or unloading process.

Reversed and remanded for further proceedings consistent with this opinion. No costs, a public question being involved.