ADAIR *v.* PHOENIX MUTUAL LIFE
INSURANCE COMPANY

1. Insurance—Life Insurance—Double Indemnity Provision—Accidental Death—Burden of Proof.

The burden of proving accidental death under a double indemnity provision of a life insurance policy is on the party claiming the benefits.

2. Insurance—Life Insurance—Accidental Death—Evidence.

Conclusion that plaintiff's husband, the deceased insured, had died accidentally was supported by the record where evidence showed that plaintiff's husband was 40 years old, in good health, was cleaning the drainage system in his home at the time of his death, his wife found him with his head submerged in water to the waist, in a drainable stationary tub with some portion of his leg or legs extended and a bruise or abrasion on his head, but neither medical testimony nor factual testimony showed accidental death or that accidental death was the sole cause of death and the court reasoned in its opinion that it was inconceivable that the insured had a heart attack while standing on his feet or leaning against the tub, three feet from the ground, and then could have fallen into the water so as to be in the drainage tub up to his waist with his head down.

3. Trial—Evidence—Admissibility—Timeliness.

Certified copy of deceased's death certificate, indicating that death was due to a heart attack, submitted to the deceased's insurer by his wife beneficiary as proof of death was not admissible at trial as an admission against the plaintiff's interest but admissible solely as proof of death where counsel argued the question, the court ruled that the certificate would be admitted only as proof of death, but stated that the pur-

---

Reference for Points in Headnotes
[1–3] 44 Am Jur 2d, Insurance § 1965.

pose of admission might be broadened later in view of the proofs and applicable statutes, the exhibit was never reoffered, no further proof in relation to the death certificate was introduced, no reference to any statute was made, and the insurer did not argue the certificate's use as an admission against interest until closing argument.

Appeal from Oakland, Arthur E. Moore, J. Submitted Division 2 January 7, 1971, at Lansing. (Docket No. 9471.)   Decided February 19, 1971.

Complaint by Evelyn L. Adair against the Phoenix Mutual Life Insurance Company of Hartford, Connecticut, for proceeds under the double indemnity clause of a life insurance policy. Judgment for plaintiff. Defendant appeals. Affirmed.

*Portnoy & Mossman* (by *Bernard N. Portnoy*), for plaintiff.

*Fischer, Sprague, Franklin & Ford* (by *David G. Barnett*), for defendant.

Before:  QUINN, P. J., and BRONSON and O'HARA,* JJ.

O'HARA, J.  This is an appeal of right by defendant insurance company. The action was brought by plaintiff wife as beneficiary of an insurance policy on the life of her husband. The policy provided payment of $5,000, the face amount upon proper proof of death, and double that amount in case of proof of accidental death, as that term is defined and limited in the policy.

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

The case was tried to the court without a jury. Judgment was for the plaintiff. A motion for a new trial was denied.

It has long been the settled law of this state that when a beneficiary brings an action on the double indemnity provision of a life insurance policy, the burden of proving accidental death rests with the claiming beneficiary. See *Merrett* v. *Masonic Mutual* (1894), 98 Mich 338, 340, and subsequent cases following this rule.

Such was plaintiff's burden here. We examine the record for evidentiary support of the verdict and judgment.

After the *pro forma* proofs of the existence of the policy, plaintiff adduced proofs, which were summarized by the trial judge. We quote:

"the decedent [was]   *   *   *   a man in good health, approximately forty years of age.

*   *   *

"[A]t the time in question, [he] took what has been referred to as a snake to the basement with the expressed object of cleaning the drainage system.

*   *   *

"[L]ater [his] wife went to the basement and there found him with his head submerged in water, with his body in water to the waist, [in what apparently was a drainable stationary tub] with some portion of his leg or legs extended, and with a bruise or an abrasion on his right forehead.

*   *   *

"[N]either by medical testimony nor by factual testimony has there been a definite proof of the cause of accidental death or proof that accidental death was the sole cause.

"[T]he party litigant did not produce either medical testimony available or autopsy evidence."

After setting forth this summary, the experienced and able trial judge found as follows:

"The court finds and it determines as a matter of necessary conclusion from the proven facts and reasonable inferences therefrom, that the respondent in this case [who] went to the basement, was a healthy individual, and something happened at that time which is best shown by all the surrounding circumstances, and I conclude in my judgment, and I will fully expose my thinking as follows. I conclude he was engaged in trying to clean his drainage system. I conclude he did have water in the basement sinks, and I conclude that his face being down in the water, and having a definite indication of a blow on his forehead, that an accident of some type did occur. It is hard for me to believe, and I reject the idea, therefore, that he could have a heart attack when he was standing on his feet or leaning against the tub, three feet from the ground, and then as [a] result of the heart attack, fall into the water so that he would be in the laundry tubs up to his waist with his head down.

"I conclude that he had an accident of some form which projected his head against a solid object and stunned him to some degree or created his death by the contact, but more likely of the two, stunned him while his body fell into the water, and death ensued from drowning.

"I conclude that plaintiff has sustained the burden of proof."

It would be impossible within the universally recognized limits of appellate review to disturb such detailed findings of fact based upon the testimony and evidence, and the well-reasoned conclusions from such findings by the court sitting as the trier of the facts, absent some clear error of law.

But, says appellant insurer, and with a capital "B", there was indeed a clear error of law, and this

is it: plaintiff wife, when she submitted to the insurer the proofs of death of the namer insured, included therewith a certified copy of her husband's death certificate.

This certified copy (apparently a photographic reproduction of some kind) was offered by defendant as its Exhibit "B". Then, a colloquy between the court and counsel took place. Plaintiff's counsel objected to its admission for any purpose other than as part of the proof of death, specifically objecting to it as proof of the validity of "what is stated therein". Defense counsel argued that it was a "competent document in and of itself" and that having been submitted to the insurer voluntarily, it thus became an admission against her interest. The court ruled:

"We will receive it for that purpose alone [proof of death] now, broaden it later in view of the statute and what your proofs show."

Thereafter the exhibit was never again re-offered, nor was any further proof in relation to it introduced. No reference to any statute appears subsequent to this point in the trial transcript. We read it line by line.

*After the parties had both rested and during argument to the court,* which is identical to argument before a jury, where one participates in trial as the trier of the fact, defense counsel on his final rebuttal argument urged:

"*Mr. Barnett* [*defendant's counsel*]: Now again on this record we have Exhibit B, which is the death certificate which says on its face, the death was due to a coronary. Not a word about drowning on Exhibit B.

"*Mr. Portnoy* [*plaintiff's counsel*]: I must object * * * [defense] counsel was reminded * * * *by the court that if he wished the document admitted*

*as a general exhibit  *  *  *  he could do so later
in the evidence and that was never done."* (Emphasis supplied.)

Defense counsel responded with vigor that it *was*
offered as an admission against interest. The court
interposed:

*"The Court:* Both documents [including the death
certificate] by and of themselves, until the circumstances are proper for their admission, until those
circumstances were shown, both documents would
not be admissible at all. Counsel admitted them for
*  *  *  limited purposes.

*"Mr. Barnett [defense counsel]*: Well, as a matter
of law on that, I believe the documents are admissible as admissions against interest.

*"The Court:* All I am saying is, it comes too late
to urge them that way. They are in evidence for
a limited purpose. *That is the record."* (Emphasis
added.)

We can naught but agree. It could hardly be contended that in the middle of argument to a jury any
party could re-raise an issue as to limitations on admissibility of exhibits earlier ruled upon by the
judge.

Appellant's second stated assignment of error,
*viz.:* that the death certificate should have been admissible as an admission against interest as to the
cause of death is simply not before us.[1] We cannot
pass upon it on review.

---

[1] Lest it be thought that we have been procedurally overtechnical
as opposed to being concerned with the merits of the question, it
should be noted that in our close review of the trial transcript we
examined the controversial exhibit with care. Speaking non-decisionally, we suggest that had it been admitted for all purposes, it
would likely have had little effect on Judge Moore's findings and
decision. In one place it indicates the cause of death was coronary
related. In another place, calling for a designation of whether the
death was accidental, the word "deferred" was handprinted in. Its
evidentiary value, if any, would seem to have been minimal as to
either party.

As previously noted, we hold the findings of fact and permissible inferences from facts of the trial judge sitting as the trier of the fact are supported by the record.

We find no reversible error. The order of the trial court denying the motion for a new trial is affirmed. Costs to the plaintiff.

All concurred.