Barbara SKOWRONEK, Plaintiff,

v.

The UNITED BENEFIT LIFE INSURANCE COMPANY, Defendant.

Civ. No. 81–10229.

United States District Court,
E.D. Michigan, N.D.

April 5, 1983.

John F. Kowalski, Alpena, Mich., for plaintiff.

Arthur M. Hoffeins, Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

JAMES HARVEY, District Judge.

Plaintiff, Barbara Skowronek, brought this diversity action as the beneficiary under a contract of insurance issued by the defendant, United Benefit Life Insurance Company, allegedly covering the death of her husband, Raymond Skowronek. Plaintiff is seeking $50,000 in death benefits claimed to be owing under the "Accidental Duty Death Benefits" clause of the contract in question. The defendant has denied coverage, claiming that the circumstances of Raymond Skowronek's death do not meet the criteria of the accidental death clause.

The Court, sitting without a jury, heard the claims of the parties on December 2, 1982. Having considered the pleadings, testimony, and documents admitted in evidence, and otherwise being fully advised, the Court hereby sets forth its Findings of Fact and Conclusions of Law pursuant to FR Civ P 52(a).

## FINDINGS OF FACT

1.) The plaintiff is a citizen of the State of Michigan.

2.) The defendant is a Nebraska Corporation with its principal place of business in Omaha, Nebraska.

3.) At the time of his death Raymond Skowronek (decedent) was an employee of the Michigan Department of Highways and Transportation. The group accident insurance policy issued by the defendant was in effect and the decedent was covered by the policy.

4.) On June 21, 1979, the decedent was performing his regular duties as a density control inspector at a Department of Highways construction site. On that day he was conducting a test to determine whether a contractor had packed enough sand into a given area to prevent settling after construction.

5.) The test required the decedent to fill a cone-shaped device (approximately fourteen inches high) with the soil to be tested. The soil was placed in the cone in a layer and hammered on a wooden block by hand approximately 25 times. A second layer was placed in the cone and the process repeated. The testing was completed when the cone would hold no more soil. The test required the cone to be hammered approximately 125 times.

6.) Upon finishing this test, the decedent recorded the results and handed them to his supervisor. Approximately five minutes later he was observed bent over and complaining of chest pains. He was immediately taken to a hospital where he died two days later.

7.) The death certificate indicates the decedent died a natural death at the age of 40, of a myocardial infarction (heart attack).

8.) The decedent had no prior medical history of heart problems.

## CONCLUSIONS OF LAW

1.) This Court has jurisdiction of this case pursuant to 28 U.S.C. § 1332.

2.) The group insurance policy issued by United Benefit provides, in pertinent part,

[The principal sum of $50,000 will be paid by United Benefit]

If an insured employee, because of accidental personal injury arising out of or in the course of his employment with the Policyholder and while insured under the policy, shall suffer, independent of sickness and all other causes, loss of life within 180 days from the date of the accident.

3.) The sole issue presented at trial was whether Raymond Skowronek's heart attack was "an accidental personal injury."

4.) Initially, the Court notes that since this is a diversity action, *Erie RR Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny mandate that this Court apply the law of Michigan to all substantive questions raised.

5.) Plaintiff alleges that the rule announced by the Michigan Supreme Court in *Collins v. Nationwide Life Insurance Co.,* 409 Mich. 271, 294 N.W.2d 194 (1980) mandates a finding that decedent's heart attack was an "accidental personal injury" resulting in his death, thereby requiring payment of the $50,000 principal sum. In *Collins* the decedent died as the result of acute voluntary alcoholic intoxication. Construing an accidental death clause similar to the one covering Raymond Skowronek, the Court determined that "if death results from the voluntary act of the victim, but the result is unexpected, unanticipated and unforeseen, it is an accidental death." *Collins* at 276, 294 N.W.2d 194, quoting *Minton v. Stuyvesant Life Ins. Co.,* 373 F.Supp. 33, 35 (D.Nev., 1974). Applying the *Collins* rule, plaintiff asserts that decedent's heart attack resulted from his voluntary act in performing work-related duties, was unanticipated, and therefore was an accidental personal injury.

However, a closer look discloses that the *Collins* rationale was peculiarly suited to a death by voluntary alcoholic intoxication.

6.) The *Collins* Court, apparently unwilling to conclude that death resulting from acute alcoholic intoxication is a natural death, was confronted with distinguishing accidental from intentional death. Since the act of ingesting the alcohol was voluntary, the Court focused on the decedent's state of mind to determine if he actually foresaw his death as a result of his voluntary act. Only if he actually foresaw his death as a result of voluntarily ingesting the alcohol could the death be considered intentional, i.e. *not* accidental.

 *Collins,* therefore, provides little guidance where, as here, the Court is concerned with distinguishing accidental from natural death.

7.) Further supporting this Court's view that *Collins* does not control the issue at bar is the policy adopted by Michigan courts that

"One who purchases an accidental death policy intends to provide benefits to his beneficiary in the event he should suffer death resulting from accident as opposed to death resulting from other means, such as suicide, disease or natural death." *Collins,* 409 Mich. at 277, 294 N.W.2d 194.

Thus the Michigan Supreme Court recognizes that death resulting from natural means is not covered by the terms of an accidental death policy.

8.) The law in Michigan provides a presumption that heart attacks are a natural rather than accidental cause of death, and places the burden of proving accidental death on the beneficiary. *Merrett v. Preferred Masonic Mutual Accident Association,* 98 Mich. 338, 57 N.W. 169 (1894) and *Adair v. Mutual Life Insurance Company of Hartford, Connecticut,* 31 Mich.App. 38, 187 N.W.2d 246 (1971).

9.) In the context of on-the-job heart attack cases, the issue plaintiffs must meet is "whether the job-related activity leading to a victim's heart attack was abnormal and unusual, taking into consideration the ordinary requirements of his job performance." *Riesterer v. Crown Life Ins. Co.,* 653 F.2d 268 (CA 6, 1981) (interpreting Michigan law). Only when something unusual, abnormal or unexpected happens in conjunction with an on-the-job heart attack following a voluntary act will recovery be permitted under an accidental death clause.

10.) As indicated in findings of fact number 5, 6, and 7 the decedent at the time of his heart attack was not performing abnormal or unusual work and nothing unexpected occurred. The decedent was merely fulfilling his duties as a density control inspector.

11.) To accept the construction of the policy language urged by plaintiff, this Court would be constrained to ignore the intent of the parties when they contracted to insure against *accidental* personal injury. More importantly, such a construction would set a dangerous precedent for it would, in effect, convert accidental death clauses to life insurance policies. A plaintiff would merely be required to prove that an unexpected death followed a voluntary act in order to recover under an accidental death policy.

Such is the function of life insurance, not accident insurance.

## CONCLUSION

For the reasons stated herein, the Court shall enter an appropriate judgment for the defendant and against the plaintiff.

IT IS SO ORDERED.